# Courtney *v.* The State.

## Selling or Removing Property on Which Another Has a Lien.

(Decided May 12, 1914.  Rehearing denied June 3, 1914.
65 South. 433.)

1. *Landlord and Tenant; Relation; Share Cropper; Lien.*—Where one furnishes the land and the teams, and the other party the labor, with agreement to divide the crop raised equally between them, the relation of hirer and hireling, and not that of landlord and tenant, is created, and the crops raised vests in the owner of the land, the other party having a lien thereon to the extent of the value of his share as provided by section 4743, Code 1907.

2. *Liens; Mortgages; Application of Proceeds; Offense; Equitable Lien.*—Equitable liens as well as legal liens are within the purview of section 7342, Code 1907.

3. *Same; Wrongful Sale; Statute.*—While section 7821, Code 1907, is exclusive in so far as it protects the interest of one co-tenant from the acts of his co-tenant, it is not so where the person claimed to have been defrauded was not the co-tenant, but a third person claiming a lien on the property disposed of; as such third person was further protected by the provisions of section 7342, Code 1907.

4. *Same; Sale; Fraud; Claims.*—Under section 7342, Code 1907, the word "claim" is of larger meaning than the word "lien" and may embrace the general ownership; the word "lien" usually embraces simply a right to charge the particular property; but as used in said section both words are used in a kindred sense, as meaning mere charges or incumbrances on the general ownership of property, and not the ownership itself.

5. *Same; Fraud Against Lien Holder.*—Under section 7342, Code 1907, whether the offense is a felony and punishable as grand larceny, or a misdemeanor and punishable as petit larceny, depends on the value of the property.

6. *Same; Value of Property; Verdict; Guilty as Charged.*—Where in a prosecution under section 7342, the verdict was guilty as charged, it will be construed to mean that the jury found the value of the property to be as charged in the indictment, for the purpose of determining whether the offense was a felony or misdemeanor.

7. *Chattel Mortgages; Liens; Priority; Crops.*—Where H. contracted with defendant and his brother, to make a crop on their land for one-half of the crop, he acquired a first lien on the crop for the value of his half under section 4743, Code 1907, and when he executed a mortgage thereon, signed also by defendant, but not by his brother, to a third party to secure advances and such mortgage was on record when defendant and his brother executed a

mortgage on the same crop to a bank the mortgage of H. constituted an assignment of a prior lien on the crop, superior to the mortgage to the bank, so that the other party was entitled to have the proceeds of the crop applied first to the payment of his debt.

8. *Same; Sale; Intent.*—Where a defendant and his co-tenant contracted with another to make a crop on their land on shares, and defendant and such other joined in a mortgage on the crop to T. to secure advances which mortgage was on record when defendant and his co-tenant executed another mortgage on the crop to a bank, and, when the crop was sold, paid the proceeds to the bank, such facts are sufficient to sustain an inference that defendant, in disposing of the property, intended to hinder, delay and defraud T., who to defendant's knowledge, had a prior lien on the crop, as there was no evidence of any attempt on defendant's part to satisfy the lien of T., either before or within a reasonable time after the property had been removed and sold.

9. *Sam; Disposition of Proceeds; Fraud.*—Where a defendant, having joined with a share cropper in executing a mortgage on the crop to another, to secure advances, afterwards joined with his co-tenant in executing a subsequent mortgage on the same crop to a bank, and after the crops were sold the proceeds were paid to the bank in satisfaction of its claim, the fact that the application of the proceeds was made by defendant's co-tenants and not by himself, was no defense to a prosecution for disposing of the property with intent to defraud the first mortgagee, in violation of section 7342, Code 1907, especially where the evidence was in conflict as to whether such payment to the bank was made by defendant or his co-tenant.

10. *Same; Evidence.*—Evidence that defendant and his co-tenant executed a mortgage to the bank, and that the co-tenant applied to the mortgage to the bank, the proceeds of the crop removed was not admissible as bearing on defendant's intent to defraud T., who held a prior mortgage executed by defendant and his share cropper; since, if the co-tenant and not the defendant sold the property and applied the proceeds, defendant would not be guilty, unles he aided and abetted in such act with the intent to defraud T., irrespective of the creditor to whom the tenant paid the proceeds, and if he did aid and abet with the intent to defraud T., he was guilty although the co-tenant paid the proceeds to the bank on its mortgage.

APPEAL from Covington Circuit Court.

Heard before Hon. A. H. ALSTON.

Marion Courtney was convicted of selling, removing or disposing of certain crops with intent to hinder, delay or defraud a prior mortgagee, and he appeals. Affirmed.

BALDWIN & MURPHY, and POWELL & ALBRITTON, for appellant. The court was in error in permitting Kirk-

patrick to state that he had a certain paper executed by defendants and another to Tisdale, and in permitting the paper to be introduced in evidence, and also in permitting it to be shown that the paper had not been paid or satisfied.—*McIntyre v. State*, 55 South. 639; *Meek v. State*, 117 Ala. 116; *Wells Amus. Co. v. Means*, 56 South. 594. Under the evidence in the case the defendant and the person with whom he contracted to make the crop were within the influence of section 4743, Code 1907, and the title to the crop was in defendant and not in his share cropper, and hence, the mortgage made by him and his share cropper to Tisdale did not convey the legal title, and that the legal title was conveyed by the mortgage made to the bank by the defendant and his brother who were the owners of the land. Hence, the only offense for which he could have been guilty, was that denounced by section 7821, Code 1907, and not that denounced by section 7342.— *Comer v. State*, 97 Ala. 83; *Smith v. State*, 84 Ala. 438. The defendant was therefore entitled to the affirmative charge. The landlord can neither relinquish nor transfer to another his right to make advances to the tenant, and thus invest in the other the lien of the landlord.—*Leslie v. Hinson*, 83 Ala. 266; *Henderson v. State*, 19 South. 733. Hence, the court was in error in permitting Hataway to state that Tisdale financed him to make the crop, and also in permitting Tisdale to state for what purposes the mortgages were executed to him. The witness cannot be impeached as to immaterial testimony.—*Martin v. State*, 16 South. 32. Hence, the court was in error in permitting the defendant to be asked if he did not know that the crop had been mortgaged when he took it off and sold it. A mortgagor has the right to sell the proceeds of a crop to satisfy a prior mortgage.—*Conner v. State,*

12 South. 413. The fact that Biggs had rented land from defendant was clearly irrelevant to any issue in the case.—*McCormick v. State,* 102 Ala. 161. The court erred in excluding the question seeking to impeach Tisdale.—*Owen v. State,* 96 Ala. 120. If the question was irrelevant in itself, the state had rendered it relevant by its method of examination, and could not say that it was incompetent.—13 Ala. 324; 14 Ala. 257; 28 Ala. 679; 71 Ala. 498.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. Under the undisputed evidence in this case the mortgage to Tisdale was prior to that of the First National Bank, and there is no error in the rulings of the court on the admission of evidence, and the fact that the proceeds of the crop was paid to the bank can in no way affect the guilt or innocence of defendant.—*Varnum v. State,* 78 Ala. 28; *Jernigan v. State,* 81 Ala. 51; *Amos v. Garvin,* 37 South. 999; *Farrow v. Wooley & Jordan,* 149 Ala. 377.

THOMAS, J.—The defendant, Martin Courtney, appellant here, was charged with removing or selling 75 bushels of corn and 2 bales of cotton with intent to hinder, delay, or defraud one W. R. Tisdale, who is alleged to have had a lawful and valid claim thereto, under a written instrument, lien created by law for rent and advances, or other lawful or valid claim thereto, verbal or written; the offense charged being, as observed, that created by section 7342 of the Code.

The corn and cotton in question were raised on premises belonging to defendant and his brother by one Hattaway, under a contract between the latter and them, whereby they were to furnish the land and team to cul-

tivate it, and Hattaway the labor, and whereby Hatta-
way was to have half the crop raised, and they the other
half. This created between them and him the relation
of hirers and hireling, and not that of landlord and
tenant, as a result whereof the entire legal title to the
crops vested jointly in them as tenants in common,
while Hattaway had only a lien thereon to the extent
of the value of one-half of such crops.—Code, § 4743,
and cases there cited.

On January 27, 1912—the year in which the crops
were raised, and after the making of the contract men-
tioned—said Hattaway in order to secure advances for
making the crop, executed a mortgage thereon to W.
R. Tisdale, the person alleged here to have been de-
frauded by defendant, in which execution Hattaway
was joined by the defendant, but not by defendant's
brother. The defendant offered to prove (the refusal of
the court to permit which is here urged by him as er-
ror) that on January 12, 1912— some two weeks, as
seen, before the above referred to Tisdale mortgage
was executed, but after the Hattaway contract was
made—defendant and his brother executed to the First
National Bank of Opp a mortgage on these same crops,
and that such mortgage was duly recorded and on rec-
ord at the time the Tisdale mortgage was executed by
defendant and Hattaway,· and that, when the crops
were gathered, they were sold, and the proceeds turned
over to the said First National Bank of Opp.

In *Conner v. State,* 97 Ala. 83, 12 South. 413, it is
held to be a good defense to a charge predicated, as the
one here, on section 7342 of the Code that the property
was sold with the consent of the prior lienholder and
applied to the discharge of his lien. See, also, *Smith
v. State,* 139 Ala. 115, 36 South. 727. That authority,
however, does not fit the facts here, for the reason that

it appears here that Hattaway, who, as seen, raised the crops, and who, as observed, had a first lien upon them under section 4743 of the Code, did not join defendant and his brother in their mortgage thereon to the said First National Bank; nor does it appear that Hattaway otherwise waived such lien to said bank. The result is that his lien on said crops was unimpaired by said mortgage to the bank, but was superior to it, being of the same force and effect as a landlord's lien.— Code, § 4743; *Amos v. Garvin* (Sup.) 39 South. 990; *Conner v. State,* 97 Ala. 84, 12 South. 413. The subsequent execution by him to Tisdale of the mortgage on the crops was in effect an equitable assignment to Tisdale of his lien upon and claim to such crops.—*Furrow v. Wooley & Jordan,* 149 Ala. 375, 43 South. 144; *Ballard v. Mayfield,* 107 Ala. 398, 18 South. 29; *Windham v. Alexander,* 156 Ala. 345, 47 South. 280, 19 L. R. A. (N. S.) 910, 130 Am. St. Rep. 102. To this extent Tisdale's claim upon such crops was therefore paramount to the mortgage of said First National Bank, and in equity Tisdale had a right to have the crops applied, to the extent of this lien, to his mortgage debt, and could probably, upon the facts here, have sustained an action of trespass on the cases for the destruction of this equitable lien of his. Equitable liens are also as much within the protection and purview of the criminal. statute (section 7342), with a violation of which defendant is here charged, as are legal liens.— *Varnum v. State,* 78 Ala. 28; *Jernigan v. State,* 81 Ala. 61, 1 South. 72.

The defendant's counsel cite us to the case of *Smith v. State,* 84 Ala. 438, 4 South. 683, and upon that authority urge that, since the defendant was a tenant in common with his brother of the crops mentioned, the facts here would justify his conviction under section

7342 of the Code—the section he is charged with violating—but that, if he could be convicted at all upon such facts, he could be convicted only upon a charge predicated on section 7821 of the Code, which provides that:

"Any tenant in common, or any person in any other way interested in any personal property or outstanding crop, in which any other person has an interest, who, with intent to defraud his cotenant, or such other person, sells, give away, or otherwise disposes of, or conceals, or removes such personal property or outstanding crop, or any part thereof, shall be punished as if he had stolen personal property of the value of the interest of such cotenant or other person."

The answer to this contention is that the defendant, in his alleged act of selling or removing the property, is not charged with any intent to defraud his brother, who, it appears, was a tenant in common with him of the property. If he had been, then we concede that a conviction could be sustained only under said section 7821 of the Code, for to this extent—the extent of protecting the interest of a cotenant from the acts of his fellow cotenant—that section has a field of operation exclusively its own.—*Holcombe v. State,* 69 Ala. 219. In this case the defendant, however, in his alleged act of selling or removing the property, is charged, as before stated, with an intent to defraud W. R. Tisdale, whose interest in the property, it appears from the evidence as pointed out, was merely that of a lienholder. And while we are of opinion that a conviction might be also sustained under section 7821, which appears to be broad enough to protect a lienholder, we are clear that it can be sustained under section 7342.

With respect to the latter section, our Supreme Court has said:

"The statute was not intended to protect the general ownership of personal property. True, the statute employs the word "claim," as well as the word "lien," and the former is generally of larger meaning than the latter, and may embrace the general ownership, while the latter usually embraces simply a right to charge the property. But it is evident that the words, as employed in the statute, are used in a kindred sense, embracing mere charges or incumbrances on the general ownership, and not the general ownership itself.—*Smith v. State,* 84 Ala. 438, 4 South. 683.

The larceny statute protects the general ownership of property; section 7821 protects the ownership of a tenant in common against the acts of his cotenant, who either conceals it, removes it, sells it, gives it away, or otherwise disposes of it with intent to defraud (*Holcombe v. State,* 69 Ala. 219), and also protects the right of any person who has an interest in the property of whatever kind less than the sole or joint ownership from the acts of any other person who has an interest in the property, either as tenant in common with another or otherwise, who either conceals it, removes it, sells it, gives it away, or otherwise disposes of it with intent to defraud; and section 7342 protects a lienholder of every kind against the acts of every person, whether that person be one who has an interest in the property or not, who either removes it or sells it with the intent either to hinder, delay, or defraud such lienholder. Sections 7821 and 7342 thus cover one field in common in that each makes criminal the act of a person who, having an interest in the property, removes it or sells it with the intent to defraud one who has a lien upon it. This is the case made by the state here, and there is no merit in defendant's insistence to the effect that a violation of section 7342 is not shown.

The statute requires that the offense be punished as if defendant had stolen the property. Whether, therefore, the crime is a felony and is to be punished as grand larceny, or is a misdemeanor and is to be punished as petit larceny, depends upon the value of the property. Ordinarily, where the value of the property is not found in the verdict of the jury, there would be difficulty in pronouncing the proper judgment and sentence (*Grant v. State,* 55 Ala. 201; *Johnston v. State,* 100 Ala. 32, 14 South. 629); but where, as here, the verdict finds the defendant "guilty as charged," it is construed to mean that the jury also find the value of the property to be as charged (*Dubois v. State,* 50 Ala. 139). Hence in this case the court properly entered up judgment and sentence for the felony.

We are likewise of opinion that the facts here are sufficient to authorize the jury in drawing an inference that the defendant, in disposing of the property, had an intent to hinder, delay, or defraud Tisdale, who had a lien upon it to the knowledge of defendant.—*Foster v. State,* 88 Ala. 187, 7 South. 185. A man is presumed to intend the natural consequences of his acts. If the debt of Tisdale had been paid by defendant, or by any one else to his knowledge, before he removed and sold the property, it could not be justly said that he intended by the removal and sale to hinder, delay, or defraud Tisdale, because, in such event, his act could not possibly have such an effect; or if, after the removal and sale, the defendant had paid Tisdale the debt before any accusation had been made or talk of prosecution arisen, the fact of payment would have been admissible for defendant's benefit as tending to negative any fraudulent intent on his part in removing and selling the property. Consequently it was clearly competent for the state to prove that Tisdale's debt had never been paid as tend-

[Courtney v. The State.]

ing to show a fraudulent intent existing in defendant's mind at the time he sold and removed the property, if he did so. The evidence for the state tended to show that defendant did so; while that for the defendant tended to show that it was not he, but his brother, that did so. Even if defendant's brother did so, if defendant aided and abetted in it with the intent alleged, he is guilty.—*Smith v. State,* 8 Ala. App. 194, 62 South. 575. There is some evidence from which the jury would be justified in inferring it.

We have discussed the principal points insisted upon by appellant. The others we find equally without merit. As we find no injurious error in the record, the judgment of conviction is affirmed.

Affirmed.

### ON REHEARING.

On rehearing it is urged, that, notwithstanding, as held in the opinion and conceded now to be correct, it would be no defense to the charge here to show that defendant and brother executed the mortgage mentioned to the First National Bank of Opp, and that he applied to such mortgage the proceeds of the crops removed and sold by them, yet such facts should have been admitted in evidence as shedding light on the question of the intent, and should have gone to the jury for the purpose of being considered by them, along with the other facts and circumstances of the case, in determining whether or not the defendant in such sale and removal, or in aiding and abetting his brother therein, had any intent to hinder, delay, or defraud Tisdale. We are not of opinion that the facts mentioned were admissible even on this basis. Defendant knew that Tisdale had a superior lien on these crops, and that the effect of a sale

of them by him, without the consent of Tisdale, was bound to hinder, delay, or defraud Tisdale, unless such part of the proceeds as were sufficient to discharge Tisdale's lien were paid to him. If not paid to him, Tisdale was as much injured by their being paid to the First National Bank of Opp, which was not entitled to them above him, although it had a second lien, as he would have been injured if they had been paid to some person who had no lien at all. Consequently the fact that defendant or his brother paid them to some one not entitled to them can have no tendency whatever to show that by the sale and removal he did not intend to hinder, delay, or defraud the person who was entitled to them. The result is that, under the facts of this case, the fact that defendant and his brother had executed to the First National Bank the mortgage mentioned could not be material to any issue. Of course, if the defendant had done nothing with respect to the sale and removal, except to deliver on demand the crops to the First National Bank of Opp, which held the mentioned mortgage on them, and which, under such mortgage, had, as seen, the legal title to and the consequent right to hold the possession of them, subject to Tisdale's lien, defendant would not be guilty of the offense here charged, for there could be no fraudulent intent on his part in doing what the law required him to do, and what the bank could have, under a writ of detinue, forced him to do—deliver to them possession of the property. Such is not the case here, however. The state's evidence tends to show a sale of the property by defendant; while the defendant's evidence tends to show that his brother sold the property and paid the proceeds of it on his debts. The fact that the debt on which his brother paid such proceeds was the joint debt of defendant and his brother, evidenced and secured by the mention-

[Jones v. The State.]

ed mortgage on the crops to the First National Bank of Opp, is consequently immaterial, for if defendant's brother, and not the defendant, sold the property, defendant is not guilty, unless he aided or abetted in the act with the fraudulent intent alleged, irrespective of the creditor to whom the brother may have paid the proceeds, and, if defendant did aid and abet his brother in the sale with the intent alleged, he is guilty, although his brother paid the proceeds to the First National Bank of Opp, and although they held the mortgage mentioned, since such mortgage was not a lien superior to Tisdale's lien.

On no theory, therefore, under the facts in this case, was such mortgage admissible, and the application for rehearing is consequently overruled.

Application overruled.